FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 0 2 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES OF THE LOCAL 531
PENSION FUND,

                       Plaintiffs,

  - against -

FLEXWRAP CORP.,

                       Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
09-CV-1439 (RRM) (RML)

**MAUSKOPF, United States District Judge.**

The Board of Trustees of the Local 531 Pension Fund ("Plaintiffs") move for summary judgment against Flexwrap Corp. ("Defendant") on its claim for withdrawal liability arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.* (Doc. No. 18.) Defendant has not opposed that motion. For the reasons set forth below, Plaintiffs' motion is GRANTED.

## BACKGROUND

The following facts are drawn from Plaintiffs' Rule 56.1 Statement ("Pls.' 56.1 Stmt.") and have not been disputed by Defendant. Because Defendant has not disputed Plaintiffs' statement of facts, those facts are deemed admitted for purposes of the motion. *See* E.D.N.Y. Local Civil Rule 56.1(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

The Local 531 Pension Fund (the "Fund") is both an "employee pension benefit fund" and an "employee benefit fund" as defined, respectively, in Sections 3(2) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2), (3). (Pls.' 56.1 Stmt. ¶ 1.) The Fund is administered at 2137-2147 Utica

Avenue, Brooklyn, New York, 12234. (*Id.* ¶ 2.) The Fund is operated pursuant to its Trust Agreement, as well as rules and regulations concerning the administration of the Local 531 Pension Plan ("Plan Rules"). (*Id.* ¶ 3.) Defendant entered into a series of collective bargaining agreements with Local 531, International Brotherhood of Teamsters, requiring Defendant to make monthly contributions to the Fund. (*Id.* ¶¶ 4, 5.) In December 1997, the collective bargaining agreements were amended, relieving Defendant, and other contributing employers, of the obligation to make monthly contributions to the Fund. (*Id.* ¶ 6.) As a result of these amendments, the Fund was terminated by a mass withdrawal of the employers. (*Id.* ¶ 7.) On December 1, 1997, Defendant ceased to have an obligation to make monthly contributions to the Fund, causing its complete withdrawal from the Fund. (*Id.* ¶ 8.)

Plaintiffs' former actuary, Milliman & Robertson, then determined the withdrawal liability of all employers that had been contributing to the Fund, including Defendant. (*Id.* ¶ 9.) On or about March 27, 1998, Plaintiffs notified Defendant of the amount of its estimated withdrawal liability and provided it with a quarterly payment schedule. (*Id.* ¶ 10.) On or about January 27, 1999, after Plaintiffs had reassessed the liability of the withdrawing employers, it notified Defendant that its total withdrawal liability was $513,998.79. (*Id.* ¶ 11.) The payment schedule set forth in the January 27, 1999 demand for payment, which Defendant admits it received, required 56 quarterly payments of $12,761.51 each, beginning May 1, 1998, and a final payment of $663.56. (*Id.* ¶ 12.) Neither party initiated arbitration proceedings under Section 4221(a) of ERISA, 29 U.S.C. § 1401(a) with regard to Plaintiffs' determination of the amount of withdrawal liability owed by the Defendant. (*Id.* ¶ 14.)

Defendant admits that it failed to pay in full each of the required quarterly payments that were due beginning on May 1, 2008. (*Id.* ¶ 15.) In November 2008, February 2009, and April

2

2009, Plaintiffs notified Defendant of its demand for unpaid quarterly payments. (*Id.* ¶ 16.) Defendant has failed to make a single full payment after Plaintiffs issued their April 2009 demand, although it tendered some partial payments of $500. (*Id.* ¶ 17.) On April 20, 2009, Defendant admitted its debt to the Fund in a letter to the Court. (*Id.* ¶ 18.) As of January 2010, Defendant ceased operations. (*Id.* ¶ 19.)

Under the Plan Rules, if an employer fails to pay its withdrawal liability quarterly payment when due, and such failure is not cured within 60 days after the employer receives notice of such failure, the employer is deemed to be in default of its withdrawal liability obligation, making the total unpaid withdrawal liability immediately payable. (*Id.* ¶ 20–21.) When it is has defaulted, the employer is also liable for interest on the total unpaid withdrawal liability from the due date of the first payment that was not timely made. (*Id.* ¶ 22.) The Plan Rules further provide that should Plaintiffs utilize proceedings to enforce the collection of withdrawal liability, the Plan shall be entitled to reasonable attorneys' fees, litigation costs, and any and all other costs of the proceeding. (*Id.* ¶ 23.) If judgment is entered in favor of Plaintiffs, the Plan Rules require the employer to pay, in addition to the principal and interest due, liquidated damages equal to the greater of 20% of the amount due or the interest due. (*Id.*) At a meeting of the Board of Trustees of the Fund held on September 21, 2006, the Trustees adopted an interest rate of 5.6% on unpaid withdrawal liability. (*Id.* ¶ 24; Reich Aff., Ex. F.)

Under the Plan Rules, Defendant has defaulted on its withdrawal liability obligation and Plaintiffs are entitled to accelerate the balance of withdrawal liability payments due. (Pls.' 56.1 Stmt. ¶¶ 25–26.) Plaintiffs' actuary, O'Sullivan Associates, has provided a final report of outstanding principal withdrawal liability. (*Id.* ¶¶ 32–33.) According to the actuary's report, the

total amount of outstanding withdrawal liability due as of May 1, 2010 was $270,161.33. (*Id.*) Interest continues to accrue at a rate of 5.6% per year. (*Id.* ¶ 34.)

Plaintiffs commenced this case on April 8, 2009. (*See* Compl. (Doc. No. 1).) Plaintiffs seek the following in this action: (1) the unpaid withdrawal liability, which as of May 1, 2010 was $270,161.33; (2) interest on the unpaid withdrawal liability, accumulating from May 1, 2010 at a rate of 5.6%; (3) liquidated damages of $54,032.27; (4) attorneys' fees of $19,593.75; and (5) costs of $524.43. (Pls.' 56.1 Stmt. ¶¶ 38–40; Pls.' Br. in Supp. of Summ. Judg. at 12.) On April 20, 2009, Defendant's Chief Financial Officer wrote to this Court and acknowledged its debt to the Fund, stating that the "bad economy" made it "impossible" for Defendant to make its required quarterly withdrawal liability payments. (Doc No. 3.) Defendant has not taken nor sought to take any discovery in this case, nor has it raised objection to any of Plaintiffs' actuarial reports. (Pls.' 56.1 Stmt. ¶¶ 35–36.) Defendant has also opted not to depose Plaintiffs' actuary or proffer an expert report of its own. (*Id.* ¶ 37.) Plaintiffs moved for summary judgment on October 6, 2010. (Doc. No. 18.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. R 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d

132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its

burden of demonstrating that no material issue of fact remains for trial . . . ."); *Ramnarain v. City of New York*, 474 F.Supp.2d 443, 446 (E.D.N.Y. 2007) (same). Courts will grant unopposed motions for summary judgment "so long as [movants] have met their threshold burden of production." *Washington v. City of New York*, No.05-CV-8884 (LAP), 2009 U.S. Dist. LEXIS 47488, at *16 (S.D.N.Y. June 5, 2009) (citation omitted).

## DISCUSSION

ERISA requires an employer that withdraws from a multiemployer plan to contribute "withdrawal liability" to the plan. *See* 29 U.S.C. §§ 1381, 1399. "[A]n employer withdrawing from a multiemployer pension plan [is required to] pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's unfunded vested benefits, calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Amalgamated Lithographers of Am. Litho. Indus. Pension Plan v. UNZ & Co.*, 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). A "complete withdrawal" from a plan occurs when the employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

After an employer withdraws, the plan sponsor must calculate the amount of withdrawal liability and notify the employer of that amount. *See* 29 U.S.C. § 1382. Within 90 days of receiving this notice, the employer may request the plan to "review any specific matter relating to the determination of the employer's liability and the schedule of payments." 29 U.S.C. § 1399(b). Any dispute over the plan's calculation of withdrawal liability must be settled through arbitration, and if the employer fails to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan. *See* 29 U.S.C. § 1401; *Levy Bros. Frocks, Inc.*, 846 F.2d at 886; *UNZ & Co.*, 670 F. Supp. 2d at 222 ("Failure

6

to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded."); *ILGWU Nat'l Ret. Fund v. Smart Modes of Cal., Inc.*, 735 F. Supp. 103, 106 (S.D.N.Y. 1990) (same).

If an employer defaults in making timely withdrawal payments, the plan is entitled to immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest from the date of the first scheduled payment not timely made. 29 U.S.C. § 1399(c)(5). A "default" is defined as "the failure to make, when due, any" withdrawal payment "if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure" or "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." *Id.*

In an action to collect withdrawal liability "in which a judgment in favor of the plan is awarded, the court shall award the plan" reasonable attorneys' fees and costs, interest, and liquidated damages. 29 U.S.C. §§ 1132(g), 1451(b). This award is mandatory. *See Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, No. 05-CV-6819 (SAS), 2006 U.S. Dist. LEXIS 28281, at *16–17 (S.D.N.Y. May 10, 2006) (citations omitted).

The uncontested facts before this Court demonstrate that, as a result of Defendant's withdrawal from the Fund on December 1, 1997, it was required to pay withdrawal liability to the Fund. Indeed, Defendant admits that it has an obligation to Plaintiffs for unpaid withdrawal liability. (Pls.' 56.1 Stmt. ¶¶ 15, 18.) Defendant's failure to make required quarterly payments has rendered it in default under ERISA and the Plan Rules. *See* 29 U.S.C. § 1399(c)(5); Article 14, Section 14.11(c) of the Plan Rules; *see also Bowers v. Transportacion Maritima Maxicana,*

*S.A.*, 901 F.2d 258, 261 (2d Cir. 1990).[1] Thus, Plaintiffs are entitled to "the outstanding amount of [Defendant's] withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5); Article 14, Section 14.11 of the Plan Rules. Moreover, because it did not demand arbitration, Defendant is barred from challenging Plaintiffs' calculation of the amount of unpaid withdrawal liability. *Levy Bros. Frocks, Inc.*, 846 F.2d at 886; *see also* 29 U.S.C. 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 USCS §§ 1381-1399] shall be resolved through arbitration."); *Labarbera v. United Crane & Rigging Servs.*, 08-CV-3274, 2011 U.S. Dist. LEXIS 20939, at *13 (E.D.N.Y. Mar. 2, 2011) ("an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated" (citations omitted)).

On June 2, 2010, Plaintiffs' actuary, O'Sullivan Associates, issued a final report demonstrating that Defendant's withdrawal liability, including both unpaid principal and interest due through May 1, 2010, is $270,161.33. (Sharkey Aff. ¶ 11.) Defendant has not taken nor sought to take any discovery in this case, and it has not raised a single objection to any of Plaintiffs' actuarial report. (Pls.' 56.1 Stmt. ¶ 35.) Moreover, Defendant has chosen not to depose Plaintiffs' actuary or proffer its own expert report. (*Id.* ¶¶ 36–37.) The Court has reviewed Plaintiffs' submission, including its actuarial report, and finds that Plaintiffs have met their burden of demonstrating that no material issue of fact remains for trial. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). Accordingly, this Court finds that Defendant is liable to

---

[1] Defendant is also in default pursuant to the Plan Rules because it ceased operations in January 2010. (*See* Pls.' 56.1 Stmt. ¶ 19; Article 14, Section 14.11(c) of the Plan Rules).

Plaintiffs for unpaid withdrawal liability in the amount of $270,161.33, plus interest at the rate of 5.6% per year from May 1, 2010, and liquidated damages of $54,032.27 (or 20% of the unpaid contributions), as provided in the Plan Rules. *See* 29 U.S.C. § 1132(g)(2).

Plaintiffs are also entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). The starting point for determining a reasonable fee is the determination of the "lodestar," or, as it is now characterized in this Circuit, the "presumptively reasonable fee," which is calculated by multiplying the number of hours reasonably expended by the attorney on behalf of a successful client by a reasonable hourly rate for that attorney. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008) (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 141 (2d Cir. 2007)); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) and *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP)(WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). In so doing, courts should take into account the so-called *Johnson* factors.[2] *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir.

---

[2] These factors are: (1) time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the profession relationship with the client; and (12) awards in similar cases.

1974); *see U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (adopting *Johnson* factor analysis).

Plaintiffs request $19,593.75 in attorneys' fees, which represents 82 hours of work, billed at a rate of $250 an hour for partners and associates, and $125 per hour for paralegals. (Paster Decl. at Exs. D, E.) Plaintiffs support their request with time records detailing the tasks their attorneys and paralegals completed throughout the course of litigation and the number of hours expended on each task. (*Id.*) This Court finds Plaintiffs' counsel's hourly rates reasonable and in line with rates awarded in this area to counsel with comparable experience. *See, e.g., Finkel v. Fred Todino & Sons, Inc.*, 08-CV-4598, 2010 U.S. Dist. LEXIS 118279, at *16 (E.D.N.Y. Oct. 8, 2010) (finding reasonable hour rates of $370 for partners, $275 for associates, and $90 for paralegals in ERISA case involving unopposed motion for summary judgment to collect withdrawal liability); *Gesualdi v. MBM Indus.*, 10-CV-2607 (BMC), 2010 U.S. Dist. LEXIS 96319, at *6 (E.D.N.Y. Sept. 13, 2010) (awarding rates of $390 for partners and $280 for associate in ERISA case involving default judgment); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328–29 (S.D.N.Y. 2006) (awarding $ 425 hourly rate for senior partner, $ 375 for junior partner, $ 300 for associates, and $ 150 for paralegals in ERISA case); *T & M Meat Fair, Inc. v. United Food and Commercial Workers, Local 174*, No. 02-CV-2415 (RWS), 2002 U.S. Dist. LEXIS 18495, at *12 (S.D.N.Y. Sept. 25, 2002) (plaintiffs' counsel's hourly rate of $ 250 held reasonable in ERISA case). The Court also finds that the time expended here is reasonable for a case that proceeded to summary judgment. *See Finkel*, 2010 U.S. Dist. LEXIS 118279, at *17 (finding approximately 80 hours a reasonable amount of time to litigate ERISA case involving unopposed motion for summary judgment to collect withdrawal liability). Accordingly, Plaintiffs' motion for $19,593.75 in attorneys' fees is granted.

Finally, Plaintiffs seek $524.43 in costs for court filing fees, process server fees, and two small charges for delivery services. An award of attorney's fees should "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation and internal quotation marks omitted). Costs "incidental and necessary to the litigation" are recoverable. *Tips Exports, Inc., v. Music Mahal, Inc.*, 01-CV-5412, 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007); *see Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (attorneys' costs "incidental and necessary to the representation" of their clients included in fee award). Here, the filing fees, process server fees, and de minimus delivery charges for which Plaintiffs seek reimbursement constitute reasonable out-of-pocket expenses. Accordingly, Plaintiffs' motion for $524.43 in costs is granted.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment (Doc. No. 18) is GRANTED. This Court finds that Defendant is liable to Plaintiffs for unpaid withdrawal liability in the amount of $270,161.33, plus interest at the rate of 5.6% per year from May 1, 2010, liquidated damages of $54,032.27, attorneys' fees of $19,593.75 and costs of $524.43.

The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 1, 2011

s/Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge